# Johnson *v.* Nashville, C. & St. L. Ry.

### *Injury to Servant.*

(Decided February 17, 1912.   Rehearing denied May 1, 1912.
58 South. 447.)

1. *Master and Servant; Injury to Servant; Action; Evidence.*—
The evidence examined and held insufficient to show any negligence by the superintendent, or to warrant submission of that question to the jury, the action being by an employee for injuries from a splinter being run into his hand from a piece of timber which was being passed to him by the superintendent.

2. *Same; Burden of Proof.*—Under subdivision 2, sec. 3910, Code 1907, the burden is on the employee to prove the negligence of the superintendent as the mere fact that he was injured in the performance of his duties in obedience to the instructions of the master or superintendent does not render the master liable.

(Dowdell, C. J., and McClellan, J., dissent.)

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Marcus Johnson against the Nashville, Chattanooga & St. Louis Railway for damages for injuries received while in its employment. Judgment for defendant on a directed verdict, and plaintiff appeals. Affirmed.

JOHN A. LUSK & SON, for appellant.   The court was in error in directing verdict for defendant, as under the evidence, it was a question for the jury as to whether or not the superintendent was negligent.—2 LeB. M. & S. secs. 695-6; *Sloss-S. S. & I. Co. v. Green,* 159

[Johnson v. Nashville, C. & St. L. Ry.]

Ala. 181; *K. C. M. & B. v. Burton,* 97 Ala. 245; *Smith v. Pioneer M. & M. Co.,* 146 Ala. 239; 108 Pac. 1057; *L. & N. v. Hundley,* 56 South. 536.

SPRAGINS & SPEAKE, and STREET & ISBELL, for appellee. The burden is on the plaintiff to show some negligence in the superintendence where his action is based on subd. 2, sec. 3910, Code 1907, as the mere fact that he was injured while in the performance of his duties under instructions from the master or his superintendent does not render the master liable. It must be also shown that the superintendent was in the exercise of superintendence in the matter of pushing or shoving the plank out of the door at the time of the accident. The evidence wholly fails to support either theory, and the court properly directed a verdict for defendant.

MAYFIELD, J.—There is but one question raised on this appeal, and that is the correctness of the trial court's action in giving the affirmative charge for the defendant.

The complaint contained two counts; each being based on the second subdivision of the Employer's Liability Act (Code 1907, § 3910), which relates to the negligence of a superintendent while in the exercise of superintendence. The specific negligence charged against the superintendent in the first count was that he "negligently shoved, or caused to be shoved or pushed or thrown, a certain piece of timber against the plaintiff." There is no contention that the proof tended to make out a case under the second count, if it failed in the first.

The evidence of the plaintiff himself, who was the only witness introduced, proved the relation existing

between himself and the master and the superintendent, showing that he was working under the direction of the. superintendent at the time injured; that he and the superintendent went together to a warehouse to get some pieces of timber to be used in repairing a boat; that the superintendent went into the warehouse, and picked out a piece of timber and pushed it out across two iron smokestacks in the doorway; that plaintiff picked it up and put it in the wagon; that the superintendent shoved out a second piece as before, and that, while plaintiff was stooping to pick it up, a third piece was shoved out by the superintendent in such a manner that it was about to strike plaintiff in the breast when he first saw it; that he threw up his hand to protect himself from it, and, as he caught it, a splinter of wood the size of a match pierced through his forefinger, hurting him very much. This was all of the evidence which could be said to have any tendency to prove negligence on the part of the superintendent; and we agree with the trial court that there was in it nothing warranting its submission to a jury. It was not shown that the superintendent negligently threw the plank across the smokestacks; nor that he had any reason to believe that it would strike, or in any way injure, plaintiff. It was not even shown that he saw the plaintiff when he shoved the plank out; the superintendent being inside the warehouse, and the plaintiff outside. There was certainly no tendency in the evidence. to show any negligence on the part of the superintendent, without which there could be no recovery.

Counsel for appellant, in his brief, says that all the plaintiff was required to prove was, that it was his duty to conform to the orders of the chief carpenter, Allred, and that, as a result of so conforming to those orders, he was injured while so engaged. It is suffi-

cient answer to this argument to say that there was no count in the complaint which sought to recover under the third subdivision of the Employer's Liability Act, which relates to injuries received by the servant in consequence of conforming to the orders of his superior, to which orders the injured servant was bound to conform, and did. conform. In other words, neither count of the complaint sought a recovery under this subdivision. Consequently this part of the argument of appellant's counsel is inapt.

While the statute makes the master liable for the negligence of the superintendent, when engaged in the exercise of such superintendence, to the same extent as if it were the negligence of the master himself, yet, if the master be shown to have done nothing but what the superintendent is shown to have done in this case, there would be nothing showing or tending to show actionable negligence on his part. The mere fact that the servant was injured while in the performance of his duties, and while acting according to the instructions of the master or the superintendent, does not make the master liable. There must be shown some actionable negligence on the part of the superintendent, if the action is under the second section of the Liability Act.

Affirmed.

ANDERSON, SAYRE, and SOMERVILLE, JJ., concur in the affirmance, upon the ground that the evidence did not tend to show that the superintendent was in the exercise of superintendence in the matter of pushing or shoving the plank out at the door, and that the master is not therefore liable. SIMPSON, J., concurs with the writer that the evidence did not tend to show any actionable negligence on the part of the superintendent,

and also concurs in the views of Justices ANDERSON, SAYRE, and SOMERVILLE. The writer is of the opinion that, if any actionable negligence on the part of the superintendent had been shown it would have been negligence for which the master is made liable under the statute. DOWDELL, C. J., and MCCLELLAN, J., dissent.

MCCLELLAN, J.—(dissenting).—The sole error assigned is the giving the affirmative charge for the defendant. Evidence was taken on two counts; both purporting to charge liability under the *second* subdivision of the Liability Act, § 3910. The particular negligence alleged in the first count is this: "That said Bart Allred, while in the exercise of such superintendence, negligently shoved, or caused to be shoved or pushed or thrown, a certain piece of timber against the plaintiff, while plaintiff, in the discharge of his duties, was in the place where said timber was so thrown, pushed, or shoved, removing another piece of timber." And that alleged in the second count is this: "The said Bart Allred negligently caused or allowed work of the defendant to be performed in a manner dangerous to the safety of the plaintiff, whereby a piece of timber was pushed, shoved, or thrown against plaintiff where he was at work." In both counts, it is alleged that the plaintiff was, when injured, in the service of the defendant, performing the duty he owed his master. Demurrers to the counts were overruled; but no error is assigned upon that ruling.

The bill of exceptions is short. Omitting the parts of it which merely describe the effect of the injury suffered by the plaintiff, the entire bill is as follows: "It was shown that the defendant was operating a railroad in this county, and in connection therewith a steamboat or boats and barges, transferring cars and passengers

to and fro from Guntersville to Hobbs Island; that A. J. Rains was captain and manager of these boats, and had general superintendence, management, and control, employed hands, and directed the affairs of the defendant as to the operation of the boats and barges; that one Bart Allred was carpenter on the boats, and had superintendence of the carpenter work on the boats, or was ship carpenter, or chief carpenter. It was shown that at the time of the infliction of the injury complained of, and for several years before, the plaintiff was in the employ of the defendant as a laborer or deck hand; that *he was instructed by Captain Rains to do whatever Allred told him to do;* that, previous to the injury, he had worked under Allred, driving nails and moving lumber and sawing planks, etc.; that *Allred was not a deck hand;* that *on the evening before the injury Rains had instructed the ship's carpenter, Allred, to take some of the hands on the boat and get some lumber, needed for repairs on the boat, from a warehouse of the defendant some distance from the boat landing* on the side of defendant's railroad; that about 8 o'clock on the morning of the day when plaintiff was injured Allred directed him to assist him in getting some pieces of timber from the warehouse and taking them to the river and putting on the boat; that Allred said he (Allred) would get in the warehouse and pick out the pieces of lumber, and for him (plaintiff) to take them up and put them on a wagon of a passerby, who had agreed, at Allred's request, to haul them down to the boat; that Allred got in the warehouse and picked out one piece of timber and pushed it out across two iron smokestacks, lying across and in front of the doorway of the warehouse, about 2½ or 3 feet in diameter; that plaintiff had picked this one up and put it on the wagon; that Allred had picked

out a second plank, and had shoved it across the smoke-
stacks, and plaintiff was stooping down in the act of
picking up this second plank, when Allred shoved an-
other piece of timber across the smokestacks in such
a way that it was in the act of sticking plaintiff about
the breast when he first saw it; that he threw up his
right hand to catch the timber to keep it from hitting
him in the breast, and, as he caught it, a splinter or
sliver on the piece of timber which was about to strike
him was thrust into the forefinger of his right hand,
about the second joint, going so near through that it
pushed the skin up on the opposite side, and could be
felt just through the skin; that this splinter was about
the size of a match; * * * that when he caught
the piece of timber it was coming fast and hard enough
to have knocked a man down, if it had hit him; that
the timber was 2½ inches by 5 inches, and about 18
feet long, and was dressed on all sides; * * * that
on the evening before the injury Capt. Rains had told
Allred to take one of the hands and go up and get the
lumber; that on the morning of the accident Allred
called plaintiff to go with him; that Allred told plain-
tiff he (Allred) would go in the warehouse and get the
lumber out, and for him (plaintiff) to take it out of
the way, and that Allred did go in and get the lumber
out, and shoved it out across the smokestacks, and that
plaintiff was taking up some of it, as directed, when
he was hurt; that Rains had instructed plaintiff, as all
other deck hands, to do whatever the carpenter asked
them to do. This being the substance of the evidence,
except as to the extent of the injury and the manner
of the treatment of the injury, the defendant request-
ed the court, in writing, to give the following written
charge to wit: 'The court charges the jury that if they
believe the evidence they will find the issues in favor

of the defendant.' This charge the court indorsed, 'Given,' and signed the same; and to the giving of this charge by the court the plaintiff then and there duly excepted."

Under the authorities to follow, it is my opinion that the trial court erred in holding, as a matter of law, that the damnifying act of Allred was *without* the exercise of his superintendence.—*Roche v. Lowell Bleachery,* 181 Mass. 480, 63 N. E. 943; *K. C., M. & B. R. R. Co. v. Burton,* 97 Ala. 240, 12 South. 88; *Dantzler v. T. C. & I. Co.,* 101 Ala. 309, 316-317, 14 South. 10, 22 L. R. A. 361; *S. S. S. & L. Co. v. Austell,* 161 Ala. 418, 49 South. 685; 2 Labatt, §§ 681, 688; *Osborne v. Jackson,* 11 Q. B. Div. 619; *Canney v. Walkeine,* 113 Fed. 66, 51 C. C. A. 53, 58 L. R. A. 33.

It has been ruled, to what should be, in view of the unaltered, in the pertinent aspect, readoption of the statute, accepted as a finality, that a superintendent, while exercising the superintendence committed to him who actually, manually assists or co-operates with a laborer in the performance of the duty to which the laborer is directed, does not by that act become divested of his character as superintendent in that particular act or service.—Author, supra. And it should be, for the like reason, also accepted as the established rule, that, where the sole duty of the party charged is as a superintendent, where he has not two segregable duties, one of superintendence and one of manual labor, as was the circumstance in Dantzler's Appeal, the superintendent's act in manually assisting or co-operating, in the accomplishment of the work or service over which the superintendent's authority extends, *as a laborer* is that of superintendence, not of a laborer; and, if even his manual act, so performed, is negligent, to the hurt of an employee, the master is liable there-

for; his act, under those circumstances, being done "whilst in the exercise of his superintendence."—Author, supra.

From the evidence it was, at least, open to the jury to find that Allred, the "ship's carpenter," was invested with superintendence to get the lumber from the warehouse for the repair of the boat; that the "hands" —the deck hands—assigned to that particular service were subjects of his superintendence in the performance of the service of so getting the lumber; that he placed plaintiff, and designated his duty in the premises; that the failure or refusal of plaintiff to perform the service of receiving and disposing of the timbers, tendered as the bill described, would have been a breach of the duty laid upon him by the direction of Allred, as superintendent; that Allred assumed voluntarily, outside of his particular duty as superintendent, the manual labor of handing the lumber out of the warehouse to the plaintiff; that, had plaintiff seasonably seen the timber thrust at him by Allred, it would have been his duty, fixed by Allred, *as superintendent,* to receive that piece, and to load it on the wagon; and that when Allred so thrust the timber, injuring him, plaintiff was *then* actually doing what Allred, *as superintendent,* had ordered him to do—such act by Allred being done without warning to plaintiff of his intention to do so.

With tendencies of the evidence to invite these findings, it is clear to me that the giving of the affirmative charge was error.